1  **J. PAUL MOORHEAD, State Bar #240029**
      Email: moorhead@luch.com
2  **MARIJA KRISTICH DECKER, State Bar #207387**
      Email: decker@luch.com
3  **LAQUER, URBAN, CLIFFORD & HODGE LLP**
   225 South Lake Avenue, Suite 200
4  Pasadena, California 91101-3030
   Telephone: (626) 449-1882
5  Facsimile: (626) 449-1958

6  Counsel for Plaintiffs, Trustees of the Southern
   California Pipe Trades Health and Welfare Trust Fund, et al.
7

8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TRUSTEES OF THE SOUTHERN              Case No.  2:19-cv-7917
    CALIFORNIA PIPE TRADES HEALTH
12  AND WELFARE TRUST FUND;              **COMPLAINT FOR (1) BREACH**
    TRUSTEES OF THE SOUTHERN            **OF WRITTEN COLLECTIVE**
13  CALIFORNIA PIPE TRADES              **BARGAINING AGREEMENTS,**
    RETIREMENT TRUST FUND; TRUSTEES     **TRUST AGREEMENTS, AND**
14  OF THE SOUTHERN CALIFORNIA PIPE     **VIOLATION OF ERISA; and (2)**
    TRADES DEFINED CONTRIBUTION         **BREACH OF CONTRACT.**
15  TRUST FUND; TRUSTEES OF THE
    SOUTHERN CALIFORNIA PIPE TRADES
16  VACATION AND HOLIDAY TRUST
    FUND; TRUSTEES OF THE SOUTHERN
17  CALIFORNIA PIPE TRADES CHRISTMAS
    BONUS FUND; TRUSTEES OF THE
18  APPRENTICE AND JOURNEYMAN
    TRAINING TRUST FUND; TRUSTEES OF
19  THE JOINT JOURNEYMEN AND
    APPRENTICE TRAINING TRUST;
20  TRUSTEES OF THE PLUMBERS AND
    PIPEFITTERS NATIONAL PENSION
21  FUND; and TRUSTEES OF THE
    INTERNATIONAL TRAINING FUND,
22
              Plaintiffs,
23
              v.
24
    CHILLER SERVICES AND RIGGING, a
25  partnership; BRUCE K. KOLSTAD, an
    individual; DANIEL L. RAGAN, an
26  individual; and CHILLER SERVICES
    RIGGING & DEMO, a California
27  corporation,

28              Defendants.

1257608                    1                    Complaint

Plaintiffs, Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, Trustees of the Southern California Pipe Trades Retirement Trust Fund, Trustees of the Southern California Pipe Trades Defined Contribution Trust Fund, Trustees of the Southern California Pipe Trades Vacation and Holiday Trust Fund, Trustees of the Southern California Pipe Trades Christmas Bonus Fund, Trustees of the Apprentice and Journeyman Training Trust Fund, Trustees of the Joint Journeymen and Apprentice Training Trust, Trustees of the Plumbers and Pipefitters National Pension Fund, and Trustees of the International Training Fund (collectively the "Trustees"), complain and allege:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction of the case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Courts jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)] to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA.  Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2.     This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947 ("LMRA") [29 U.S.C. § 185(a)], which grants the United States original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3.     Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the plaintiffs' trust funds are administered, in which the relevant acts took place, and in which monies are due and payable.

///

4.    To the extent this complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5.    Plaintiffs are the Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund, Trustees of the Southern California Pipe Trades Retirement Trust Fund, Trustees of the Southern California Pipe Trades Defined Contribution Trust Fund, Trustees of the Southern California Pipe Trades Vacation and Holiday Trust Fund, Trustees of the Southern California Pipe Trades Christmas Bonus Fund, Trustees of the Apprentice and Journeyman Training Trust Fund, Trustees of the Joint Journeymen and Apprentice Training Trust (collectively the "Local Trusts"), and the Plumbers and Pipefitters National Pension Fund ("National Trust") and the International Training Fund ("International Trust").    The Local Trusts, National Trust and International Trust are referred to collectively as the "Trusts."  The Trusts are express trusts created pursuant to written agreements and declarations of trust ("Trust Agreements") between the Southern California Pipe Trades District Council No. 16 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry ("District Council No. 16") and various employer associations in the plumbing and pipefitting industry in Southern California, or between District Council No. 16, and other councils of the United Association of Plumbers and Pipefitters, and various employer associations across the United States.  The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)].

6.    The Trustees are "*fiduciar[ies]*" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)].

7.    The Trustees are informed and believe, and thereon allege, that at all times material herein, defendant Chiller Services and Rigging has been a partnership duly organized under the laws of the state of California, with its principal place of business located in Los Angeles County, California.

8. The Trustees are informed and believe, and thereon allege, that at all times material herein, defendant Bruce K. Kolstad ("Bruce Kolstad") has been an individual residing in Los Angeles County, California, and has been a partner in Chiller Services and Rigging.

9. The Trustees are informed and believe, and thereon allege, that at all times material herein, defendant Daniel L. Ragan ("Dan Ragan") has been an individual residing in Los Angeles County, California, and has been a partner in Chiller Services and Rigging.

10. The Trustees are informed and believe, and thereon allege, that at all times material herein, Bruce Kolstad and Dan Ragan were and continue to be the general partners of Chiller Services and Rigging, and therefore are personally liable for the actions and obligations of Chiller Services and Rigging.

11. The Trustees are informed and believe, and thereon allege, that at all times material herein, defendant Chiller Services Rigging & Demo has been a corporation organized under the laws of the state of California, with its principal place of business located in Los Angeles County, California. Collectively, Chiller Services and Rigging, Bruce Kolstad, Dan Ragan, and Chiller Services Rigging & Demo are referred to as "Defendants."

12. The Trustees are informed and believe, and thereon allege, that at all times material herein, Defendants have been "*employer[s]*" engaged in "*commerce*" in an "*industry affecting commerce*," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1), 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

## EXECUTION OF BARGAINING AGREEMENTS

13. On or about May 1, 2002, Bruce Kolstad and Dan Ragan executed and delivered a written agreement to District Council No. 16, whereby they agreed their company would be bound by the terms and conditions of the written and existing collective bargaining agreement known as the Master Agreement for the Plumbing and

Piping Industry of Southern California between District Council No. 16 and the Southern California Contractors.  The written agreement executed by Bruce Kolstad and Dan Ragan identified the company as a "partnership" of Bruce Kolstad and Dan Ragan, operating under license number 753390 issued by the California Contractors State License Board ("CSLB").

14.    CSLB license number 753390 is associated with "Chiller Services and Rigging," a partnership.

15.    The Trustees are informed and believe, and thereon allege, that at no time material herein, has Chiller Services Rigging & Demo (the corporation) maintained a valid license with the CSLB.

16.    On August 15, 2002, Defendants became a member of the California Plumbing and Mechanical Contractors Association (the "CPMCA"), a multiemployer association, and authorized the CPMCA to represent Defendants in matters related to labor negotiations.  Defendants thereby became bound to the written and existing collective bargaining agreement known as the Master Agreement for the Plumbing and Piping Industry of Southern California between District Council No. 16 and the CPMCA.  The collective bargaining agreements alleged in paragraph 13 and 16 are referred to collectively as the "Master Agreements."

17.    The terms and provisions of each of the Trust Agreements are incorporated by reference into the Master Agreements.  At all times material herein, Defendants have been bound to the Master Agreements and to the Trust Agreements.

## POSSIBLE ADDITIONAL DEFENDANTS

18.    The Trustees are informed and believe, and thereon allege, that to avoid paying contributions, benefits and/or withholdings and in violation of the Master Agreements, Trust Agreements and section 515 of ERISA [29 U.S.C. § 1145], Defendants and one or more other unknown individuals or entities diverted or redirected employees and/or business affairs, assets or operations between one or more individuals and/or entities.  If the Trustees ascertain the identity of any such individuals or entities

that have engaged in such activities, the Trustees will seek leave to amend this Complaint to include such individuals and entities as defendants.

19.   If the Trustees subsequently ascertain that one or more other individuals, or entities, is responsible, in whole or in part, for the day-to-day operations of Defendants and/or is responsible, in whole or in part, for all, or a majority of, the decisions pertaining to the payment of fringe benefit contributions, or union dues, to the Trusts, including decisions: (a) whether or not to pay such contributions or dues, (b) if payment is to be made, when to pay such contributions or dues, and/or (c) how to use such funds pending payment to the Trusts; the Trustees will seek to amend this Complaint to include such additional parties as defendants.

**FIRST CAUSE OF ACTION**

**BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENTS, TRUST AGREEMENTS, AND VIOLATION OF ERISA**

**(AGAINST DEFENDANTS)**

20.   Trustees hereby incorporate herein by this reference paragraphs 1 through 19 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

21.   By the terms and provisions of the Master Agreements and Trust Agreements, and at all times material herein, Defendants agreed, and were obligated, to the following:

A.   Prepare and submit true, complete and accurate written monthly contribution reports ("Report(s)") to the Trusts on a timely basis showing: i) the identities of employees performing work covered by the Master Agreements, ii) the number of hours worked by these employees, iii) the rates of pay, iv) character of hours worked (e.g., straight time, over-time, etc.), and v) based upon the hours worked by employees, the proper calculation of the fringe benefit contributions, benefits and/or withholdings attributable to the same employees.  Such monthly contribution reports are due on the 10th day of each successive month;

B.    Pay to the Trusts fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by applicable employees.  These amounts are delinquent if not received by the 15th of the month succeeding the month in which the work was performed.  These amounts are due and payable at the Trusts' administrative offices in Los Angeles, California; and

C.    Permit the Trustees and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreements and Trust Agreements.

22.    Defendants are "*employer[s]*" and a "*contractor[s]*" as those terms are understood in the Master Agreements and Trust Agreements.

23.    Defendants are "*employer[s]*" as defined and used in section 3(5) of ERISA [29 U.S.C. § 1002(5)].

24.    Section 515 of ERISA [29 U.S.C. § 1145], provides that "*every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.*"  Pursuant to section 515 of ERISA [29 U.S.C. § 1145], Defendants are obligated to make contributions to the Trusts.

25.    Sections 429 of ERISA [29 U.S.C. § 1059], provides that "*every employer shall ... maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.*"  Pursuant to section 429 of ERISA [29 U.S.C. § 1059], Defendants are obligated to maintain records sufficient to allow the Trustees to determine the contributions owed by Defendants to the Trusts, and the benefits due to the employees of Defendants.

26.    In or about March 2019, the Trustees completed an audit of Defendants' payroll and related records for the time period of January 1, 2013, through September 30, 2018 ("Audit"). The Audit revealed that Defendants failed to report and pay the Trusts $560,124.35 for fringe benefit contributions.

27.    The Trustees are informed and believe, and thereon allege, that Defendants owe, but have failed to pay, certain additional amounts of fringe benefit contributions, and other damages for breach of the Master Agreements and Trust Agreements and in violation of section 515 of ERISA [29 U.S.C. § 1145], in amounts not presently known to the Trustees, but these additional amounts will be established by proof.

28.    Defendants are "*delinquent,*" as that term is used in the Master Agreements and/or related Trust Agreements.

29.    Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, this Court shall award the plan: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20% of the unpaid contributions; (iv) reasonable attorneys' fees and costs; and (v) such other legal or equitable relief as this Court deems appropriate.  Interest on unpaid contributions shall be determined by using the rate provided under the plan.

30.    Pursuant to the Master Agreements, Trust Agreements and section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], Defendants are obligated to pay to the Trusts liquidated damages for the detriment caused by Defendants' failure to pay fringe benefit contributions in a timely manner.  Pursuant to the written Joint Collection Policy and Procedures ("Joint Collection Policy") promulgated by the Trustees pursuant to the authority granted to them by the Master Agreements and Trust Agreements, those liquidated damages are assessed at ten percent (10%) of the unpaid or untimely contributions.  However, if a lawsuit is filed to collect the contributions, the Joint Collection Policy provides for liquidated damages assessed at twenty percent (20%) of the unpaid or late contributions.  Pursuant to the Audit, Defendants owe liquidated damages of at least $112,024.87.  The exact amount of liquidated damages owed by Defendants will be established by proof.

31.     Pursuant to the Master Agreements, Trust Agreements, Joint Collection Policy and section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], Defendants owe the Trusts interest calculated at 18% per annum on all unpaid or late paid fringe benefit contributions from the dates the sums were originally due until paid.  The exact amount of interest owed by Defendants will be established by proof.

32.     By the Master Agreements, Trust Agreements, Joint Collection Policy and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)], Defendants agreed that in the event of any delinquency, it would pay all legal and auditing fees and costs in connection therewith, whether incurred before or after litigation is commenced.  The Trustees have incurred legal and auditing fees and costs as a result of Defendants' failure to pay contributions to the Trusts.  The exact amount of the legal and auditing fees and costs due and payable has not been ascertained at this time.  These amounts shall be established by proof.

33.     By the Master Agreements and Trust Agreements, Defendants agreed in the event they failed to pay fringe benefit contributions or otherwise comply with the terms and provisions of the Master Agreements and related Trust Agreements, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trustees, in an amount based upon a calculation set forth in the Master Agreements. Trustees are informed and believe, and thereon allege, that the Trustees are entitled to such good faith deposit and delivery of monies or bond from Defendants.  The amount of the good faith deposit or bond will be established by proof at trial.

34.     Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], the Court may grant such other legal or equitable relief as the Court deems appropriate.  As part of the Trustees' judgment, the Trustees shall also request the Court to:

A.     Order Defendants, and their representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of, all unpaid contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid contributions;

B.      Order Defendants, and their representatives, agents and associates, to post and deliver either a good faith deposit, or a performance bond issued in favor of the Trusts, in an amount determined by the Court to be appropriate;

C.      Order the creation of a constructive trust on all applicable property, and order the transfer of the applicable property to the Trusts; and

D.      Order Defendants, and their representatives, agents and associates, to pay to the Trusts all amounts due the Trusts, including, but not limited to, the unpaid contributions, benefits, withholdings, damages, interest, legal fees, audit fees and other expenses and damages incurred.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
## (AGAINST ALL DEFENDANTS)

35.    Trustees hereby refer to, and incorporate herein, by this reference paragraphs 1 through 34 above, inclusive of any and all subparagraphs, to the same effect as if set forth verbatim.

36.    The Trustees are informed and believe, and thereon allege, that amounts due under the Master Agreements as union dues and association fees and related amounts (excluding employer and employee contributions) are not recoverable under ERISA.

37.    The Master Agreements require Defendants to pay to the Trustees, for the benefit of District Council 16, its affiliated local unions, the CPMCA, Piping Industry Progress Education & Trust Fund, Labor Management Compliance Council, and SoCalPlumbers911 (collectively the "Assignors"), certain amounts for each hour worked by Defendants' employees performing work covered by the Master Agreements.  The Trustees are the assignee of the Assignors for collecting said hourly contributions.  Defendants have failed to pay amounts due under the Master Agreements to Trustees for the benefit of the Assignors, which amounts shall be established by proof.

38.     Pursuant to the Master Agreements and Joint Collection Policy, Defendants are obligated to pay to the Trustees liquidated damages on all unpaid or delinquent contributions (including those amounts due to the Assignors).   Pursuant to the Joint Collection Policy liquidated damages are assessed at ten percent (10%) of the unpaid or untimely contributions.   However, if a lawsuit is filed to collect the contributions, the Joint Collection Policy provides for liquidated damages assessed at twenty percent (20%) of the unpaid or late amounts.   The amount of liquidated damages owed by Defendants will be established by proof.

39.     Pursuant to the Master Agreements and the Joint Collection Policy, Defendants owe the Trustees interest at 18% per annum on all unpaid or delinquent contributions (including those amounts due to the Assignors) from the dates the sums were originally due or should have been paid to the Trustees until paid.   The amount of interest owed by Defendants will be established by proof.

## **PRAYER**

WHEREFORE, the Trustees pray for judgment as follows:

1.     For unpaid fringe benefit contributions and other damages for breach of contract totaling at least $560,124.35, plus additional amounts as established by proof;

2.     For liquidated damages of at least $112,024.87, plus additional amounts as established by proof;

3.     For interest at the rate of 18% per annum, or other applicable legal rate, on all contributions due from their respective due dates, until paid, plus additional amounts as established by proof;

4.     For damages for breach of contract as proved;

5.     For the Trustees' audit costs, plus additional amounts as established by proof;

6.     For the Trustees' reasonable attorneys' fees in amounts as proved;

7.     For costs of suit incurred herein; and

8.     For such additional relief as this Court deems just and proper, including, but not limited to, the following:

A.     An Order directing Defendants, his/its/their representatives, agents and associates, to provide a full and complete accounting for, and tracing the use of all unpaid fringe benefit contributions and identify all property, real or personal, tangible or intangible, that are the result, whether in whole or in part, of the use of any unpaid fringe benefit contributions;

B.     An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to the Trusts; and

C.     An Order directing Defendants, his/its/their representatives, agents and associates, to pay to the Trusts all amounts due the Trusts, including, but not limited to, the unpaid fringe benefit contributions, benefits, withholdings, damages, legal fees, audit fees and other expenses and damages incurred.

Dated: September 12, 2019          LAQUER URBAN CLIFFORD & HODGE LLP

By: */s/ J. Paul Moorhead*
J. Paul Moorhead, Counsel for Plaintiffs,
Trustees of the Southern California Pipe
Trades Health and Welfare Trust Fund, et al.

## WAIVER OF JURY TRIAL

Plaintiffs waive a jury trial in this action.

Dated: September 12, 2019          LAQUER URBAN CLIFFORD & HODGE LLP

By: */s/ J. Paul Moorhead*
J. Paul Moorhead, Counsel for Plaintiffs,
Trustees of the Southern California Pipe
Trades Health and Welfare Trust Fund, et al.